IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2015

**STATE OF TENNESSEE v. WILLIE L. TAYLOR**

**Appeal from the Circuit Court for Montgomery County**
**No. 41200922     Michael R. Jones, Judge**

---

**No. M2014-01614-CCA-R3-CD – Filed May 27, 2015**

---

Following a jury trial, the defendant, Willie L. Taylor, was convicted of aggravated burglary and aggravated assault, both Class C felonies. He was sentenced as a Range III, persistent offender to fourteen years for each conviction, to be served concurrently. On appeal, he argues that the evidence is insufficient to support his aggravated burglary conviction and that the State committed prosecutorial misconduct by arguing facts not in evidence. Based upon our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

James Kevin Cartwright (on appeal) and Wayne Clemons (at trial), Clarksville, Tennessee, for the Appellant, Willie L. Taylor.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and C. Daniel Brollier, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**FACTS**

In a light most favorable to the State, the proof at trial showed that on June 14, 2012, the defendant attacked Kristi Balthrop with a golf club and threatened to kill her if she did not pay him the money he was owed for drugs. The defendant then grabbed Mrs. Balthrop by the arm, and they went to the nearby home of Mrs. Balthrop's landlord, Randall Byard, where the defendant pushed Mrs. Balthrop in the door when Mr. Byard

answered it and hit Mr. Byard in the jaw with the golf club, breaking the head from the shaft and causing severe injuries to Mr. Byard. As a result of his actions, the defendant was indicted for the attempted aggravated robbery and aggravated kidnapping of Kristi Balthrop, the reckless endangerment of Mrs. Balthrop's three-year-old child, and the aggravated burglary and attempted especially aggravated robbery of Randall Byard. The jury acquitted him of the charges involving Mrs. Balthrop[1] and her child but convicted him of aggravated burglary as charged and of the lesser-included offense of aggravated assault regarding Mr. Byard.

At the defendant's trial, Michael Balthrop identified a photograph of the rental house on Lyle Hollow Road in Palmyra, Tennessee, where he, his wife, and two children were living in June 2012. He said that he had a burn pile in front of the house, which was depicted on the photograph. He said that on the morning of June 14, 2012, Mrs. Balthrop left their home "to go out and find money for the rent." When she returned home that afternoon, the defendant was with her and followed her inside the house. The defendant introduced himself as "Memphis" and raised his shirt to show Mr. Balthrop a tattoo on his right side that read "Memphis." The defendant told Mrs. Balthrop that she owed him $500, pulled out a golf club from behind his shirt, and hit her in the head. Mrs. Balthrop sat down on the couch, picked up her three-year-old child, and as she held her child, the defendant hit her in the leg with the golf club. The defendant said he was going to kill Mrs. Balthrop if she did not give him his money. The defendant, still armed with the golf club, grabbed Mrs. Balthrop by the arm and they left. When Mrs. Balthrop returned about fifteen minutes later, she was on the phone with the police and told Mr. Balthrop they needed to go to the Byards' house, which they did.

Randall Byard testified that on June 14, 2012, Mrs. Balthrop came to his house with the defendant, whom he did not know. When Mr. Byard opened his front door, the defendant pushed Mrs. Balthrop inside. Mr. Byard did not ask the defendant to come inside or give him permission to do so. The defendant had a golf club in his hand, and Mrs. Balthrop had blood trickling down from her forehead. Mrs. Balthrop and the defendant "both acted upset . . . and they were arguing back and forth about money." The defendant said, "I need some money. . . . [T]hat b---- owes me some money." Mr. Byard told the defendant he did not have any money, and as he turned around to go toward his bedroom to get his gun, the defendant hit him with the golf club in the jaw and arm. Mrs. Balthrop then ran out the door, and the defendant followed her.

Mr. Byard said that the blows from the golf club shattered his jaw and damaged his vocal chords. He was hospitalized for seven days in the critical care unit and

---

[1]Mrs. Balthrop was incarcerated in Illinois at the time of the defendant's trial and unavailable to testify.

underwent six or seven surgeries. Mr. Byard said that he had one more surgery pending and still had numbness on one side of his face.

Kendra Byard, Randall Byard's wife, testified that in June 2012, Michael and Kristi Balthrop were renting a house for $500 a month from the Byards. The rental house was located approximately one-quarter mile down the rural road from the Byards' home. Mrs. Byard said that when she came home on June 14, 2012, between 6:00 and 7:00 p.m., she noticed Mr. and Mrs. Balthrop sitting inside their van, which was parked by the Byards' mailbox. When Mrs. Byard went inside, she found Mr. Byard "sitting in the kitchen floor holding his mouth and there was blood everywhere." She saw the head of a golf club, a broken plate, and a knocked-over plant on the floor. She called 9-1-1, and the sheriff's department and EMS arrived shortly thereafter.

Deputy Terrence Byrne of the Montgomery County Sheriff's Department testified that he responded to the emergency call at the Byards' residence at about 6:30 p.m. on June 14, 2012. Mr. Byard "had a lot of blood coming from his mouth." Deputy Byrne saw a broken golf club, which was collected into evidence.

Officer Jesse Hedrick with the Montgomery County Sheriff's Department identified a Bud Ice beer can he collected into evidence on June 14, 2012, from the front part of the Byards' house.

Sergeant Mark Wojnarek of the Montgomery County Sheriff's Department testified that he collected DNA samples from Mr. Byard and the defendant.

Blake Neblett testified that on June 14, 2012, he was a patrol deputy with the Montgomery County Sheriff's Department. He collected into evidence a shaft from a golf club found near the Byards' residence.

Investigator Fred Smith of the Montgomery County Sheriff's Department testified that on the evening of June 14, 2012, he was sent to the Gateway Medical Center Emergency Room where he met Mr. Byard and Mrs. Balthrop, who was hysterical. He identified a photograph he took of Mr. Byard depicting the severe injuries to his face and said that Mr. Byard had difficulty speaking.[2] Investigator Smith subsequently went to the Byards' residence where he saw broken dishes on the floor, a broken golf club head on the kitchen floor, seven to eight human teeth on the carpet, and a lot of blood. He made photographs of the scene and collected the golf club head into evidence. He identified a photograph of the defendant's tattoo taken during the booking procedures at the jail. The tattoo read "Memphis" and ran "down sort of like [the defendant's] side area."

---

[2]Mr. Byard's medical records show that he was transferred to Vanderbilt University Medical Center later that night for "higher level of care."

Special Agent Forensic Scientist Miranda Gaddes of the Tennessee Bureau of Investigation ("TBI") Trace Evidence Unit testified that she examined the fractured golf club head and shaft submitted to her in the case and determined that they were at one time joined. She was able to align the fracture lines and determine that the golf club head and shaft fit together.

Dr. Laura Boos, a special agent forensic scientist for the TBI Forensic Biology Unit, testified that she examined the golf club head submitted in the case, and her testing revealed the presence of Mr. Byard's blood on it. Dr. Boos said that the DNA profile she obtained from the Bud Ice beer can matched the defendant.

The defendant testified that he had met Mrs. Balthrop a few months before June 14, 2012. At about 5:30 p.m. that day, he met Mrs. Balthrop at a mutual friend's house. Mrs. Balthrop told the defendant she would exchange sex for drugs, and they then walked to the defendant's house nearby. After they had sex, the defendant gave Mrs. Balthrop some crack cocaine, which she smoked. The defendant borrowed Mrs. Balthrop's van to "try[] to sell [his] dope" and to go buy a couple of cans of beer. He then asked Mrs. Balthrop if he could keep her van until the next day because he "still had . . . drugs and stuff on [him] that [he] had to get rid of." Mrs. Balthrop agreed to let him use the van in exchange for "a fifty piece of crack." The defendant and Mrs. Balthrop then drove to her house, and Mr. Balthrop came outside, yelling at Mrs. Balthrop for being gone for two days. When Mrs. Balthrop got out of the van, Mr. Balthrop saw the defendant and started complaining about Mrs. Balthrop "bringing [her] tricks" to the house. According to the defendant, as Mrs. Balthrop was trying to run up the steps, Mr. Balthrop hit her, knocked her down, and kicked her twice. After Mrs. Balthrop went inside the house, the defendant knocked on the screen door and Mr. Balthrop invited him inside. The defendant introduced himself as "Memphis" and informed Mr. Balthrop that Mrs. Balthrop had rented their van to him for "a fifty piece." Mr. Balthrop told the defendant he would not agree to the rental of the van, and Mrs. Balthrop and the defendant then left.

The defendant said that Mrs. Balthrop told him she could get his money from her landlord. When they arrived at the Byards' residence, Mr. Byard answered the door, Mrs. Balthrop told him she needed to talk to him, and he said, "Come on in the house." Mrs. Balthrop and the defendant went in to the kitchen and were arguing about her trying to "beat [him] out of the little dope that [he] gave her." The defendant asked Mrs. Balthrop to take him home, but Mrs. Balthrop said she had to calm her nerves, pulled out her pipe, and "hit some more dope." Mr. Byard told them they had to leave and grabbed a golf club from a bucket containing umbrellas and grazed the defendant across the shoulder with it, bending the head of the shaft in the process. The defendant and Mr. Byard were "tussling in the house and . . . tearing up the stuff and knocking down the

4

dishes." Mr. Byard told the defendant he was going to get his gun, so the defendant grabbed the golf club and hit Mr. Byard in the side of the face. The defendant then left the Byards' house, ran across the street, and asked a neighbor for a ride home.

At the conclusion of the proof, the jury acquitted the defendant of the charges involving Mrs. Balthrop and her child but convicted him of aggravated burglary as charged and of the lesser-included offense of aggravated assault regarding Mr. Byard. The trial court imposed an effective sentence of fourteen years.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues that the evidence is insufficient to support his conviction for aggravated burglary because he "entered the premises of Mr. Byard in the belief that he did have the effective consent of Mr. Byard."

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

<u>Bolin v. State</u>, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing <u>Carroll v. State</u>, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated burglary occurs when one enters the habitation of another, without consent, with the intent to commit a felony, theft, or assault. Tenn. Code Ann. §§ 39-14-401; -402; -403. The defendant asserts that the evidence fails to show that he entered the residence without the effective consent of the owner. However, Mr. Byard testified that he opened his door only because Mrs. Balthrop was knocking on it. After pushing Mrs. Balthrop inside, the defendant, armed with a golf club, entered Mr. Byard's home without his permission. In the light most favorable to the State, the evidence shows that the defendant's entrance into the victim's home was nonconsensual. Thus, the evidence is sufficient to sustain the defendant's conviction for aggravated burglary.

## II. Prosecutorial Misconduct

The defendant argues that the State engaged in prosecutorial misconduct by misstating evidence: (1) in opening statements when the prosecutor claimed that Mr. Balthrop had the golf club sitting outside his house and used it to stir the fire in his fire pit; and (2) in closing statements when the prosecutor claimed that Mr. Balthrop used the golf club to stir a burn pile. The State counters that the defendant has waived this issue by failing to object to the statements at trial or in his motion for new trial.

Since this issue has been raised for the first time on appeal, we may consider it only under the plain error doctrine. In order for us to find plain error: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice." <u>State v. Smith</u>, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting <u>State v. Adkisson</u>, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The presence of all five factors must be established by the record before we will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established. <u>Id.</u> at 283.

We cannot conclude that the plain error doctrine is applicable in this matter. Initially, we note that the defendant is not contesting his conviction for aggravated assault. By the defendant's own testimony, he struck the victim with the golf club, as the victim was going to retrieve a firearm. Thus, a misstatement by the State as to where the golf club had been before the victim was struck does not affect a substantial right of the defendant, nor was its resolution necessary to do substantial justice. Accordingly, this issue is waived. See Tenn. R. App. P. 3(e), 36(a).

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE